# IN RE JONATHAN M. ▌
## (SC 16330)

McDonald, C. J., and Norcott, Katz, Palmer and Sullivan, Js.

(*One justice dissenting*)

Argued September 27, 2000—officially released January 16, 2001

*Raymond J. Rigat*, for the appellant (petitioner father).

*Eliot D. Prescott*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (respondent department of children and families).

*Jeanne Milstein* and *Christy Scott* filed a brief for the state office of the child advocate as amicus curiae.

*Opinion*

KATZ, J. The principal issue in this appeal is whether a petition for habeas corpus is the appropriate procedural vehicle through which a party may challenge a judgment terminating his or her parental rights based upon a claim of ineffective assistance of counsel.[1] We conclude that a habeas petition may not be so used to attack collaterally the termination judgment.

Neither party in this case disputes the underlying facts, which were set forth in the memorandum of decision terminating the petitioner's parental rights. The

---

[1] In *In re Alexander V.*, 223 Conn. 557, 571 n.12, 613 A.2d 780 (1992), we noted that "[a]lthough this court has generally held that a writ of habeas corpus may be sought to determine the right to custody of a minor child, we have not held that habeas corpus would lie for an ineffective assistance of counsel claim arising out of a termination proceeding."

petitioner, John M., and Stacie M. (mother)[2] are the biological parents of Jonathan M., who was born on May 19, 1997. On October 13, 1997, following a verbal domestic dispute resulting from the petitioner's refusal to hand Jonathan over to the mother after her extended absence from their home, the petitioner filed a police incident report in which he related that he had not felt comfortable leaving Jonathan in the mother's care because of her recent drug use. No action was taken on the incident report at that time, but the department of children and families (department) was notified. On October 21, 1997, following a meeting with an investigations worker from the department, the petitioner signed a service agreement with the department. The agreement directed the petitioner to pursue custody of Jonathan through the Probate Court, to abstain from using drugs himself, to provide adequate supervision to Jonathan, to apply for financial assistance for Jonathan, to obtain parenting support from the YWCA and to cooperate with the department. The petitioner failed to take steps consistent with any of these directives.

Thereafter, on October 29, 1997, approximately two weeks after the initial incident report, the petitioner refused to leave Jonathan in the mother's care while he went to work because he thought that she had been using drugs. Jonathan's mother, who had endured a long history of drug abuse, had been on a cocaine "binge" and had been absent from the home for the preceding two weeks. With Jonathan between them, the petitioner and the mother fought verbally and physically. The police arrived and arrested the mother, and Jonathan was placed in foster care.

[2] Although the first initial of the last name of both the mother and the petitioner are identical, they are not married to each other. Because the mother is not a party to the case before us, we limit our discussion of the facts involving the mother in the underlying termination action to those that concern primarily the petitioner and this appeal.

On October 31, 1997, the department filed cotermi-
nous petitions against the mother and the petitioner for
neglect and termination of their parental rights under
General Statutes (Rev. to 1997) § 17a-112 and Practice
Book § 33-12.[3] On that same day, the department
secured an order of temporary custody regarding
Jonathan.

In its petition for neglect, the department alleged that
Jonathan had been denied the care and attention that
he required physically, educationally and morally, and
that he was living under conditions and circumstances
injurious to his well-being. See General Statutes (Rev.
to 1997) § 46b-120 (8) (B) and (C).[4] The department's
termination petition alleged that Jonathan had been
"denied, by reason of an act or acts of parental commis-
sion or omission, the care, guidance or control neces-
sary for his physical, educational, moral or emotional
well-being. . . ." General Statutes (Rev. to 1997) § 17a-
112 (c) (3) (C).[5]

---

[3] General Statutes (Rev. to 1997) § 17a-112 (a) provides in relevant part:
"In respect to any child in the custody of the Commissioner of Children
and Families in accordance with section 46b-129, either the commissioner,
or the attorney who represented such child in a pending or prior proceeding,
or an attorney appointed by the Superior Court on its own motion, or an
attorney retained by such child after attaining the age of fourteen, may
petition the court for the termination of parental rights with reference to
such child. . . ."

Practice Book § 33-12 provides in relevant part: "When coterminous peti-
tions are filed, the judicial authority first determines whether the child is
neglected, uncared for or dependent by a fair preponderance of the evidence;
if so, then the judicial authority determines whether statutory grounds exist
to terminate parental rights by clear and convincing evidence; if so, then
the judicial authority determines whether termination is in the best interest
of the child by clear and convincing evidence. . . ."

[4] General Statutes (Rev. to 1997) § 46b-120 (8) provides in relevant part:
"[A] child or youth may be found 'neglected' who . . . (B) is being denied
proper care and attention, physically, educationally, emotionally or morally
or (C) is being permitted to live under conditions, circumstances or associa-
tions injurious to his well-being . . . ."

[5] General Statutes (Rev. to 1997) § 17a-112 (c) provides in relevant part:
"The Superior Court, upon hearing and notice as provided in sections 45a-
716 and 45a-717, may grant a petition filed pursuant to this section if it finds

On October 8 and 9, 1998, the court held a trial on the neglect and termination petitions. Both the mother and the petitioner obtained court-appointed attorneys and "vigorously contested" the department's allegations. The court made factual findings regarding each of Jonathan's parents. The court found that the petitioner, then sixty years old, had met Jonathan's mother, then twenty-four years old, at an Alcoholics Anonymous meeting in 1994. According to the trial court, the two "quickly became intimate," and began living together. The court found that the petitioner had had a long history of heroin abuse and, although he had experienced intermittent periods of sobriety, he had been maintained on methadone and had used heroin as recently as three weeks before the trial. The court also noted the petitioner's criminal record.

The court credited the opinion of the court-appointed psychologist, David Mantell, who reported that, given the long-term pattern of the petitioner's addiction, he "remained seriously concerned about [the petitioner's]

by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts provided such finding is not required if the court has determined at a hearing pursuant to subsection (b) of section 17a-110 that such efforts are not appropriate, (2) that termination is in the best interest of the child, and (3) that over an extended period of time, which except as provided in subsection (d) of this section, shall not be less than one year, provided such time limit shall not apply to subparagraph (e) of this subsection: (A) The child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child; (B) the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child; (C) the child has been denied, by reason of an act or acts of parental commission or omission, the care, guidance or control necessary for his physical, educational, moral or emotional well-being. . . ."

ability to maintain his sobriety." Mantell concluded that the petitioner's age and his substance abuse "significantly limit[ed] his parental capacity and raise[d] strong concerns about his ability to minimally meet his child's needs on a regular basis." At trial, the petitioner admitted that he was not ready to parent Jonathan and that he needed to address his own problems with addiction.

On October 23, 1998, after making extensive findings with respect to Jonathan's biological parents, the court determined, by a preponderance of the evidence, that they both had neglected their son. The court concluded that, because of the drug use by both the mother and the petitioner, Jonathan had been denied proper care and attention and had been permitted to live under conditions and circumstances injurious to his well-being.

The court also determined by clear and convincing evidence that the ongoing drug use had served to deny Jonathan, by reason of acts of parental commission and omission, the care, guidance and control necessary for his well-being. The court terminated the parental rights of both the mother and the petitioner, concluding that "neither [the petitioner] nor [the mother] is able to care for their son in the foreseeable future. . . . Jonathan needs the stability and consistency that are provided in [the foster] home."

Following the termination judgment, the petitioner's court-appointed trial counsel filed a motion to withdraw from representing the petitioner on the ground that there were no issues worthy of appeal. The court granted the motion to withdraw and, pursuant to Practice Book § 35-4 (b), appointed a second attorney to review the record and determine if the issues therein warranted an appeal.[6] On November 30, 1998, the sec-

---

[6] Practice Book § 35-4 (b) provides: "If an indigent party wishes to appeal a final decision and if the trial counsel declines to represent the party because in counsel's professional opinion the appeal lacks merit, counsel shall file a timely motion to withdraw and to extend time in which to

ond attorney advised the court via letter that, because the record did not present any viable claims for appeal, he would not serve as appointed counsel for such an appeal.

Thereafter, the petitioner filed an appeal pro se. On January 22, 1999, the Appellate Court notified the petitioner that he was required to file a preliminary statement of issues, a designation of the contents of the record, a docketing statement, and a certificate regarding a transcript order, if any. The court ordered the appeal to be dismissed unless the petitioner filed the necessary documents by February 2, 1999. On February 9, 1999, the Appellate Court, noting that none of the documents listed in the January 22 notice had been filed, dismissed the petitioner's appeal.

On April 6, 1999, the petitioner, who, in the interim, had secured pro bono counsel to handle his appeal, filed a motion to open the dismissal in the Appellate Court. The Appellate Court denied that motion on May 5, 1999. On July 14, 1999, this court denied a petition for certification to appeal from the Appellate Court's denial. *In re Jonathan M.*, 250 Conn. 903, 734 A.2d 981 (1999).[7]

On August 6, 1999, the petitioner filed the present action, seeking a writ of habeas corpus. The petitioner

take an appeal. The judicial authority shall then forthwith appoint another attorney to review this record who, if willing to represent the party on appeal, will be appointed for this purpose. If the second attorney determines that there is no merit to an appeal, that attorney shall make this known to the judicial authority at the earliest possible moment, and the party will be informed by the clerk forthwith that the party has the balance of the extended time to appeal in which to secure counsel who, if qualified, may be appointed to represent the party on the appeal."

[7] Justice Berdon, joined by now Chief Justice McDonald, dissented from the decision to deny certification. See *In re Jonathan M.*, supra, 250 Conn. 907–908 ("The facts of this case narrate a nightmare. Our judicial system has failed Jonathan, violated [the petitioner's] constitutional rights, and parted [the petitioner] from Jonathan with a legal wedge.").

alleged that both his initial court-appointed trial counsel and the second attorney, appointed to review the record to determine if any issues were worthy of appeal, had been ineffective. In addition, the petitioner claimed that the trial court, in its decision to terminate his parental rights, had denied him due process and equal protection under the federal and Connecticut constitutions. The petitioner sought as relief an order setting aside the judgment of termination and awarding him custody of Jonathan. Alternatively, the petitioner sought either an order for a new trial, or restoration of the right to appeal the termination judgment.

On August 10, 1999, the department moved to dismiss the petition for habeas relief. The trial court granted the motion to dismiss on January 4, 2000. Thereafter, the petitioner appealed from the judgment of dismissal to the Appellate Court, and on June 21, 2000, pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2,[8] we granted the department's motion to transfer the appeal to this court.

---

[8] General Statutes § 51-199 (c) provides: "The Supreme Court may transfer to itself a cause in the Appellate Court. Except for any matter brought pursuant to its original jurisdiction under section 2 of article sixteen of the amendments to the Constitution, the Supreme Court may transfer a cause or class of causes from itself, including any cause or class of causes pending on July 1, 1983, to the Appellate Court. The court to which a cause is transferred has jurisdiction."

Practice Book § 65-2 provides: "Motion for Transfer from Appellate Court to Supreme Court

"After the filing of an appeal in the appellate court, but in no event after the case has been assigned for hearing, any party may move for transfer to the supreme court. The motion, addressed to the supreme court, shall specify, in accordance with provisions of Section 66-2, the reasons why the party believes that the supreme court should hear the appeal directly. A copy of the memorandum of decision of the trial court, if any, shall be attached to the motion. The filing of a motion for transfer shall not stay proceedings in the appellate court.

"If, at any time before the final determination of an appeal, the appellate court is of the opinion that the appeal is appropriate for supreme court review, the appellate court may file a brief statement of the reasons why transfer is appropriate. The supreme court shall treat the statement as a

On appeal, the petitioner claims that the trial court improperly concluded that he lacked standing to petition for a writ of habeas corpus. The petitioner asserts further that he had a right, grounded in the federal and state constitutions, to the effective assistance of counsel at the termination proceeding. The petitioner maintains that the trial court improperly determined that, as a matter of procedure and public policy, the writ of habeas corpus is not a vehicle through which he may vindicate that right. According to the petitioner, due process requires that he be permitted to file the writ to attack collaterally the termination judgment.

The department argues that the trial court correctly determined that the petitioner lacked standing to file the habeas petition. It contends that the petitioner's right to effective assistance of counsel at the termination proceeding is derived solely from statute[9] and is not of constitutional magnitude. The department also maintains that the trial court properly determined that the petitioner could not invoke the writ of habeas corpus to attack collaterally the judgment terminating his parental rights.

We determine that the petitioner had standing in this case. We also assume, without deciding, that the petitioner had a constitutional right to effective assistance of counsel at the termination proceeding, but conclude, nevertheless, that the writ of habeas corpus is not the appropriate vehicle by which he may assert a claim of ineffective assistance of counsel as a means of attacking

---

motion to transfer and shall promptly decide whether to transfer the case to itself."

[9] General Statutes § 45a-717 (b) provides in relevant part: "If a party appears [in a termination of parental rights hearing] without counsel, the court shall inform such party of the party's right to counsel and upon request, if he or she is unable to pay for counsel, shall appoint counsel to represent such party. No party may waive counsel unless the court has first explained the nature and meaning of a petition for the termination of parental rights. . . ."

collaterally the termination judgment. Accordingly, we affirm the judgment of the trial court dismissing the petition.

Before addressing the substantive issues, we address briefly the scope of our review. The conclusions reached by the trial court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. See *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000) (recognizing that plenary review applies to questions of law); *Sims* v. *Warden*, 229 Conn. 178, 185, 640 A.2d 601 (1994) (noting that litigant disappointed by outcome of habeas corpus proceeding may obtain plenary review). Thus, "[w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct"; (internal quotation marks omitted) *In re David W.*, 254 Conn. 676, 686, 759 A.2d 89 (2000); and whether they "find support in the facts that appear in the record." (Internal quotation marks omitted.) *Powers* v. *Olson*, 252 Conn. 98, 105, 742 A.2d 799 (2000).

I

Because "[t]he issue of standing implicates this court's subject matter jurisdiction," we address it first. *Fish Unlimited* v. *Northeast Utilities Service Co.*, 254 Conn. 21, 31, 755 A.2d 860 (2000); *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 552, 698 A.2d 245 (1997) ("[i]t is a basic principle of law that a plaintiff must have standing for the court to have jurisdiction").

Construing cases in which "it was not clear whether the person seeking the habeas writ was a legal parent," the trial court in the present case determined that "a child habeas petition may be filed not only by a person who is [i]ndisputably a parent but also by a person who has a strong claim to currently being a parent." See, e.g., *Weidenbacher* v. *Duclos*, 234 Conn. 51, 77, 661

A.2d 988 (1995) (permitting putative biological father to maintain standing for habeas action seeking custody and visitation of minor child born to mother while married to another man); *Hao Thi Popp* v. *Lucas*, 182 Conn. 545, 551, 438 A.2d 755 (1980) (biological mother has "constitutional right to preserve her parental rights"; habeas court lacked jurisdiction to terminate parental rights). The trial court acknowledged that, in our previous cases, we have concluded that "only parents or legal guardians of a child have standing to seek habeas corpus relief"; *Nye* v. *Marcus*, 198 Conn. 138, 143, 502 A.2d 869 (1985); but determined that "the petitioner is in a fundamentally different position" because his parental rights previously had been terminated by a court of competent jurisdiction. The trial court recognized that the petitioner's purpose in filing the habeas petition had been to challenge the propriety of the termination judgment, but ultimately decided that, because he could "make no claim that he currently is the parent of Jonathan . . . he lacks standing to seek habeas corpus relief."

The department tacitly agrees with the trial court's conclusion and, relying on the definition of "parent" in General Statutes § 17a-1 (12),[10] contends that, because the petitioner is no longer within that definition, he may not file a habeas petition. The department also maintains that the petitioner "has a cognizable right that is sufficient to establish standing if and only if a writ of habeas corpus is recognized as an appropriate procedural mechanism" in which he may assert his claim of ineffective assistance of counsel at the termination proceeding.

---

[10] General Statutes § 17a-1 (12) defines "parent" as "a biological or adoptive parent, except a biological parent whose parental rights have been terminated . . . ." The definition of parent was added to § 17a-1 by No. 97-272, § 1, of the 1997 Public Acts, effective October 1, 1997, prior to the filing of the petitions in this case. Thus, our reference to § 17a-1 (12) is to the current revision.

The petitioner claims that the trial court improperly concluded that he lacked standing to file the habeas petition. He argues that, as Jonathan's biological father, he "has a significant 'real interest' in the cause of action." Although acknowledging the presumptive validity of the trial court's final order terminating his parental rights, the petitioner asserts that "it is the very legality of that order [that] the petitioner seeks to challenge" through the habeas action. We agree with the petitioner.

"[T]he standing doctrine requires a plaintiff to demonstrate two facts. First, the complaining party must be a proper party to request adjudication of the issues. . . . Second, the person or persons who prosecute the claim on behalf of the complaining party must have authority to represent the party." (Citation omitted; internal quotation marks omitted.) *Community Collaborative of Bridgeport, Inc.* v. *Ganim,* supra, 241 Conn. 553. Moreover, "[w]hen standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [party] has a legally protected interest [which may be remedied]." (Internal quotation marks omitted.) *Steeneck* v. *University of Bridgeport,* 235 Conn. 572, 579, 668 A.2d 688 (1995).

In this case, there is no doubt that the petitioner, who is Jonathan's biological father, is vested with the authority to prosecute his own claim of ineffective assistance of counsel at the termination trial. With respect to standing, then, our focus is on whether the petitioner is a proper party to request an adjudication of that claim. See id.; see also *Orsi* v. *Senatore,* 230 Conn. 459, 469–70, 645 A.2d 986 (1994) (remanding to trial court to determine standing of foster parent to file declaratory

judgment action on behalf of minor child represented by court-appointed guardian).

We previously have addressed whether, in a habeas corpus proceeding, the biological father of an illegitimate child has standing to request an adjudication of visitation issues. See *Doe* v. *Doe*, 163 Conn. 340, 307 A.2d 166 (1972). In *Doe*, we concluded that, although a statute had granted sole guardianship of the illegitimate child to the mother, the father had "alleged sufficient facts to establish his standing to have the issues determined." Id., 345. Our conclusion rested primarily upon the United States Supreme Court decision in *Stanley* v. *Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972), wherein the father of illegitimate children was deemed to have a constitutional right to a hearing on his fitness before the children were taken from him. *Doe* v. *Doe*, supra, 344. In *Doe*, we recognized that the United States Supreme Court had determined that private interests of a man who had " 'sired and raised' " his children warranted deference and protection; id.; and, because we viewed the court's pronouncement as "controlling," we concluded that the petitioner had standing to pursue a writ of habeas corpus and have visitation issues adjudicated. Id., 345; see also *Pi* v. *Delta*, 175 Conn. 527, 531, 400 A.2d 709 (1978) (statutory guardianship "does not absolutely preclude the natural father of an illegitimate child from seeking a judicial determination of custody or visitation"); cf. *Nye* v. *Marcus*, supra, 198 Conn. 143 (interpreting *Doe* as determining only that no standing existed with respect to minor child where man had not alleged he was father).[11]

---

[11] We note that *Doe* v. *Doe*, supra, 163 Conn. 340, involved a habeas petition regarding custody and visitation of two minor children. As to one child, there was no dispute that the unwed parties were the biological parents and we concluded therein that the father had standing with respect to that child. See id., 345. Because the petitioner had not alleged, however, that the other child was his natural child, or that he was a legal guardian, we concluded that he lacked standing to pursue the writ with respect to that child. See id.

More recently, in *Weidenbacher* v. *Duclos*, supra, 234 Conn. 53, we addressed the question of whether a man, who had alleged that he was the biological father of a minor child, had standing to establish his paternity when the mother was married to another man at the time of the child's birth. We concluded therein that the putative biological father did have standing to bring a habeas petition seeking custody of the child. Id., 77. We acknowledged that the statutory scheme established the procedures governing paternity actions, and identified classes of persons authorized to bring such actions, but we determined that "[i]t does not necessarily follow . . . that unless the petitioner qualifies under the terms of [the] statute, he cannot demonstrate paternity for purposes of petitioning a court for a common law writ of habeas corpus for custody of a child." Id., 64–65.

We were similarly unpersuaded that the presumption, which states that a child born in wedlock is the legitimate child of the mother and her husband, abrogated the putative biological father's standing in the habeas proceeding. Id., 69. We recognized that "a biological father has a cognizable constitutional right to maintain a relationship with his child"; id., 72; and determined that the presumption of legitimacy is not conclusive, but rather, rebuttable. Id., 69. We further held that the "putative father of such a child must offer proof, at a preliminary evidentiary hearing devoted to standing, that he is entitled to set in motion the judicial machinery to determine whether he is the biological father of the child." Id., 76.

In the present case, the trial court concluded that "[a]lthough the writ of habeas corpus in child custody cases is of common-law origins, the General Assembly has recently acted in this area [by granting standing to foster parents and adoptive parents to petition for a

writ of habeas corpus].[12] . . . Accordingly, if the fundamental change in the habeas writ proposed by the petitioner is to take place, this change should also come from the General Assembly . . . ." In essence, the trial court determined that, although habeas writs have been permitted to challenge orders regarding custody, because the petitioner had sought to press his attack on the underlying termination judgment, an issuance of a habeas writ in this case would expand the scope of the common-law writ. In refusing to expand the writ to allow the petitioner to challenge the termination judgment together with the custody issues, the court relied upon that judgment and concluded that the petitioner lacked standing to have any of the issues regarding custody or the termination judgment adjudicated in the habeas proceeding.

The court cited General Statutes § 46b-1[13] and Practice Book § 25-40,[14] which furnish habeas corpus relief in family relations matters involving custody and visitation. We do not, however, read the court's memorandum of decision as relying on those provisions as restricting the petitioner's ability to maintain standing. Indeed, the court recognized that we have determined that biological parents do have standing to seek habeas relief. Under the reasoning of the trial court, the judgment terminating the petitioner's parental rights essentially

[12] The court cited General Statutes § 52-466 (f), which provides in relevant part that "[a] foster parent or an approved adoptive parent shall have standing to make application for a writ of habeas corpus regarding custody of a child currently or recently in his [or her] care . . . ."

[13] General Statutes § 46b-1 is the first section of definitions in chapter 815, entitled "Court Proceedings In Family Relations Matters." Section 46b-1 provides in relevant part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (8) habeas corpus and other proceedings to determine the custody and visitation of children . . . ."

[14] Practice Book § 25-40, entitled "Habeas Corpus in Family; The Petition," and the sections that follow, govern the procedures for habeas actions in family relations matters.

stripped him of his status as Jonathan's biological father.

We are unpersuaded by the reasoning of the trial court and conclude that the petitioner is a proper party to request an adjudication of the issues presented in the habeas petition. There is no dispute in this case that the petitioner is the child's biological father. The primary issue in this appeal is whether the habeas petition may be employed as a means of testing the merits of the termination judgment, and not solely as a means of bringing challenges to custody and visitation orders. Although the petitioner's parental rights have been terminated by a presumptively valid judgment; see *L. & L. Builders, Inc.* v. *Parmelee,* 221 Conn. 203, 204, 602 A.2d 1016 (1992) (judgment rendered by court of general jurisdiction presumed correct); to foreclose, on jurisdictional grounds, his ability to seek custody and assert subsequent challenges to the termination judgment, whether through a petition for a writ of habeas corpus or other means, would require a circular course of reasoning in which we are unprepared to indulge. See *Slimp* v. *Dept. of Liquor Control,* 239 Conn. 599, 609, 687 A.2d 123 (1996) (noting that standing is practical concept rather than technical rule). Indeed, under the logic employed by the trial court, the petitioner, following a judgment terminating his parental rights, would no longer have standing in any subsequent proceeding wherein he sought to attack that judgment, save, perhaps, a direct appeal.

As we recognized in *Weidenbacher* v. *Duclos,* supra, 234 Conn. 51, although statutes prescribe permissible means by which certain parties may assert the writ in child custody cases; see footnote 12 of this opinion; it does not necessarily follow that the petitioner, who seeks to challenge the very order terminating his rights as Jonathan's natural parent and gain legal custody, is precluded, as a jurisdictional matter, from bringing the

petition and having these issues adjudicated in the first instance. Accordingly, we reject the department's argument that the petitioner lacks standing to pursue the writ.

## II

The petitioner next contends that he had a constitutional right, under article first, §§ 8, 9 and 10, of the Connecticut constitution[15] and under the due process clause of the fourteenth amendment to the United States constitution,[16] to the effective assistance of counsel throughout the termination proceedings. The department argues that the right to effective assistance of counsel in parental rights termination cases derives solely from statute; see footnote 9 of this opinion; and that, as such, the state may place reasonable restrictions thereon.

## A

In *State* v. *Anonymous*, 179 Conn. 155, 159, 425 A.2d 939 (1979), we addressed, as a matter of first impression, whether the right to effective assistance of counsel inures to a parent at a termination hearing. Therein, we concluded that "[n]either the sixth amendment to the

---

[15] Article first, § 8, of the Connecticut constitution provides in relevant part: "In all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . . No person shall be compelled to give evidence against himself, nor be deprived of life, liberty or property without due process of law . . . ."

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[16] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

United States constitution[17] nor article first, § 8,[18] of the Connecticut constitution can be extended [beyond criminal cases] to a parent in a termination of parental rights hearing to provide a right to effective assistance of counsel." Id.

Although the petitioner concedes that a portion of article first, § 8, and all of article first, § 9, traditionally have been applied in criminal cases and does not contend explicitly that we should overrule State v. Anonymous, supra, 179 Conn. 155, he argues that "because termination proceedings are akin to criminal proceedings, our state constitution requires appointment of effective counsel . . . ." The petitioner asserts further that the due process clause of the fourteenth amendment to the federal constitution and its state constitutional counterparts; see footnote 15 of this opinion; require the appointment of effective counsel in parental rights termination proceedings.

We note that the petitioner is constitutionally entitled to the effective assistance of counsel only if he had a constitutional right to appointed counsel in the termination proceeding.[19] In Lassiter v. Dept. of Social Services,

[17] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."

[18] In Anonymous, we addressed only that part of article first, § 8, of the Connecticut constitution, which parallels the sixth amendment to the United States constitution and provides that "[i]n all criminal prosecutions, the accused shall have a right to be heard by himself and by counsel . . . ." See State v. Anonymous, supra, 179 Conn. 159 n.2. We did not address the due process clause of article first, § 8.

[19] Our examination of similar cases wherein a litigant maintained a right to appointed counsel leads us to reaffirm that that right necessarily presupposes the right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (sixth amendment right to counsel is right to effective assistance of counsel); Copas v. Commissioner of Correction, 234 Conn. 139, 153, 662 A.2d 718 (1995) (criminal defendant entitled to adequate and effective counsel under sixth and fourteenth amendments to United States constitution and article first, § 8, of Connecticut constitution); State v. Anonymous, supra, 179 Conn.

452 U.S. 18, 24, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the Supreme Court of the United States addressed whether, in a termination of parental rights case, an indigent parent has a fourteenth amendment due process right to appointed counsel. Therein, the court determined that " 'fundamental fairness' " implicit in due process analysis requires "the presumption that an indigent litigant has a right to appointed counsel only when, if he [or she] loses, he [or she] may be deprived of his [or her] physical liberty." Id., 26–27. It was "against this presumption that all the other elements in the due process decision [were] measured." Id., 27.

In deciding whether due process required the appointment of counsel to an indigent parent in a termination proceeding, the Supreme Court balanced three factors enunciated in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976).[20] See

159–60 (statutory right to counsel of parent in termination proceeding includes right to effective assistance of counsel).

[20] We have acknowledged that "[t]he United States Supreme Court [has] set forth three factors to consider when analyzing whether an individual is constitutionally entitled to a particular judicial or administrative procedure: 'First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " *Scinto* v. *Stamm*, 224 Conn. 524, 535, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993), quoting *Mathews* v. *Eldridge*, supra, 424 U.S. 335. Applying *Mathews*, we previously have balanced these elements in other cases in which due process claims were raised. See, e.g., *In re Alexander V.*, 223 Conn. 557, 560, 613 A.2d 780 (1992) (applying *Mathews* factors in considering whether due process requires competency hearing for parent in termination of parental rights case); *Lavertue* v. *Niman*, 196 Conn. 403, 408–409, 493 A.2d 213 (1985) (weighing *Mathews* factors and concluding that indigent parent has federal due process and state constitutional right under article first, § 10, to appointed counsel in state supported paternity action). The petitioner in the present case does not argue that the *Mathews* factors are not appropriate in considering whether, under the state constitution, due process requires effective assistance of counsel at termination proceedings. In the absence of any such argument, we will adhere to our prior practice and apply these factors. See footnote 21 of this opinion.

*Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 27. First, the court determined that "[a] parent's interest in the accuracy and justice of the decision to terminate his or her parental status is . . . a commanding one." Id. Second, the court considered the government's interest in the welfare of the child and its interest in avoiding the costs associated with lengthy termination proceedings, and concluded that they were "hardly significant enough to overcome private interests as important as those here . . . ." Id., 28. Finally, the court examined "the risk that a parent will be erroneously deprived of his or her child because the parent is not represented by counsel"; id.; and concluded that "the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high." Id., 31.

Weighing these interests against the presumption that due process does not require appointed counsel in the absence of the potential for losing one's physical liberty, the court ultimately decided to "leave the decision [of] whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." Id., 32.

In the case before us, we need not decide whether the *Mathews* factors tip the balance in favor of a due process right for indigent parents to effective, appointed counsel at a termination hearing. Neither trial court in this case, in either the termination proceeding or in the habeas action, addressed the issue. Moreover, even if we were to assume, without deciding, that the petitioner had a right, under either the due process clause of the fourteenth amendment or under similar provisions in our state constitution, to the effective assistance of appointed counsel throughout the termination proceedings, we conclude that due process does

not dictate that the petitioner must be permitted to utilize the writ of habeas corpus as a procedural means of attacking collaterally the termination judgment. See *City Recycling, Inc.* v. *State*, 247 Conn. 751, 758, 725 A.2d 937 (1999) (court refrained from formulating "a rule of constitutional law broader than is required by the precise facts to which it is to be applied" [internal quotation marks omitted]).

## B

Before addressing the petitioner's claim that he has a due process right to raise collateral challenges to the termination judgment via the common-law writ of habeas corpus, we note that the petitioner does not argue directly that he has such a right under the applicable statutes or rules of practice. See footnotes 13 and 14 of this opinion. In fact, the petitioner states in his brief that "[t]he question of whether the writ of habeas corpus is allowed to challenge termination judgments does not devolve upon statutory interpretation." Rather, the petitioner argues only that, because the writ is of common-law origin, and that "[s]tatutes must be interpreted to comply with both the state and federal" constitutions, he is entitled to use the writ to mount a collateral attack on the termination judgment. The petitioner acknowledges that the department cites to statutes that provide other avenues through which the petitioner may assert his challenge; see footnotes 25 and 26 of this opinion; but he contends that the emphasis on these statutes is "misplaced," and that refusing to permit his collateral attack through a writ of habeas corpus "could not survive constitutional scrutiny."

The department argues that there is no statutory authority, nor any provision in our rules of practice, that contemplates the use of a habeas proceeding as a means by which the petitioner may press his arguments concerning the termination judgment. The department

contends that the statutes pertaining to habeas corpus in this context, and our case law, limit that proceeding to issues concerning custody and visitation. See footnotes 13 and 14 of this opinion; see also *Weidenbacher* v. *Duclos*, supra, 234 Conn. 60–61 (noting that it is well settled in Connecticut that habeas corpus is proper procedural vehicle with which to challenge custody of child); *Doe* v. *Doe*, supra, 163 Conn. 342 (addressing habeas corpus for visitation rights). The petitioner does not dispute the department's arguments concerning our prior decisions sanctioning the use of habeas corpus in custody and visitation matters. In fact, the cases that he relies on fall within the same category. Once again, he argues that under "common-law tradition" and as a matter of constitutional entitlement, he must be permitted habeas relief.

Thus, even if we were to assume without deciding that the petitioner had a cognizable constitutional right to the effective assistance of counsel in the termination proceedings, we next address the principal question presented in this appeal: Whether due process requires the writ of habeas corpus as a procedural means of vindicating the right to effective assistance of counsel in an action to terminate parental rights.[21] We hold that it does not.

As noted in footnote 20 of this opinion, whether due process mandates that the petitioner be permitted to assert the writ of habeas corpus in this case requires

---

[21] Although the petitioner asserts that both the state and federal constitutions provide him with the right to counsel at the termination proceeding, he does not suggest that our state constitution independently requires, beyond the federal constitution, habeas corpus as a means of challenging the termination judgment. Because the petitioner has failed to brief or analyze any state constitutional provision in support of his claim that due process requires habeas corpus as a means of vindicating the right to effective assistance of counsel, we limit our discussion to his federal constitutional claim. See *Scinto* v. *Stamm*, 234 Conn. 524, 534–35 n.9, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993).

us, consistent with *Mathews*, to balance three relevant factors. See *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 27 (evaluating, under *Mathews* analysis, "the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions"); *Scinto* v. *Stamm*, 224 Conn. 524, 535, 620 A.2d 99, cert. denied, 510 U.S. 861, 114 S. Ct. 176, 126 L. Ed. 2d 136 (1993) (same). Although the petitioner provides no analysis of these factors, he argues that because "his parental rights were terminated unlawfully, [and] the current custody of his child is tantamount to unlawful restraint," an action for habeas relief is appropriate. The petitioner cites General Statutes §§ 52-493[22] and 46b-1 (8),[23] asserting that, because he is seeking legal custody of Jonathan, and because we have long recognized a habeas petition as an appropriate procedure for asserting custodial challenges; see, e.g., *Weidenbacher* v. *Duclos*, supra, 234 Conn. 60 (noting that as early as 1796, Connecticut recognized habeas corpus petition seeking custody of child); a habeas petition is also an appropriate means of challenging the termination judgment. After a review of the pertinent factors, we conclude that due process does not require habeas relief as a means of lodging a collateral attack on the termination judgment. See, e.g., *Scott* v. *Scott*, 445 S.W.2d 871, 872 (Ky. 1969) ("habeas corpus procedure, in situations involving disputes over possession or custody of children, ordinarily should be invoked only to determine who has the right to immediate possession, and the proceedings should be confined to that issue").

---

[22] General Statutes § 52-493 provides: "Any court having cognizance of writs of habeas corpus, mandamus, quo warranto, prohibition or ne exeat may, in any action pending before it, make any order, interlocutory or final, in the nature of any such writ, to the extent of its jurisdiction, so far as it may appear to be an appropriate form of relief."

[23] See footnote 13 of this opinion.

"The termination of parental rights is defined as the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and his [or her] parent . . . [and as such, it] is a most serious and sensitive judicial action." (Citation omitted; internal quotation marks omitted.) *In re Juvenile Appeal (Anonymous)*, 181 Conn. 638, 640, 436 A.2d 290 (1980). It is without question that a parent in a termination proceeding maintains a preeminent interest. Because "[t]he rights to conceive and raise one's children have been deemed essential, basic civil rights of man," we have recognized that, in a termination proceeding, "the parent's interest includes the most essential and basic aspect of familial privacy—the right of the family to remain together without the coercive interference of the awesome power of the state." (Internal quotation marks omitted.) *In re Alexander V.*, supra, 223 Conn. 561; id., 560 (analyzing whether, under *Mathews*, due process requires competency hearing for parents in termination cases); see *Lavertue* v. *Niman*, supra, 196 Conn. 408–409 ("[t]he family relationship is so significant as to be accorded constitutional protection"); see also *Lassiter* v. *Dept. of Social Services*, supra, 452 U.S. 27 ("a parent's desire for and right to the companionship, care, custody, and management of his or her children is an important interest that undeniably warrants deference and, absent a powerful countervailing interest, protection" [internal quotation marks omitted]).

The government's interests in a termination proceeding, however, are twofold. "First, the state has a fiscal and administrative interest in lessening the cost involved in termination proceedings. . . . Second, as parens patriae, the state is also interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child."

(Citation omitted.) *In re Alexander V.*, supra, 223 Conn. 565.

With respect to the first of these state interests, we conclude that the government's concern for expense is insufficient to overcome the private interest of the parent. See *Lavertue* v. *Niman*, supra, 196 Conn. 409–10 (concluding that state's monetary interest insignificant when compared to parental interest in paternity action even though state has substantial economic stake in adjudication of paternity when child receiving state assistance); see also *Little* v. *Streater*, 452 U.S. 1, 15–16, 101 S. Ct. 2202, 68 L. Ed. 2d 627 (1981) (state's interest in avoiding cost of blood grouping test in paternity action insufficient to overcome private interest of parent).

The department asserts, however, that permitting the petitioner to file a writ of habeas corpus in this case would affect negatively the best interest of the child and, hence, impact the state's interest as parens patriae. Focusing on the second of the government's interests, the department points to language in the trial court's memorandum of decision emphasizing that "there is near certainty that expanding the habeas writ to permit ineffective assistance claims in these cases will have a profound effect on the welfare of the children involved." We agree.

"As parens patriae, the State's goal is to provide the child with a permanent home." *Santosky* v. *Kramer*, 455 U.S. 745, 766, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); id., 767 (determining that due process requires, at minimum, clear and convincing standard of proof in termination of parental rights cases). To allow a habeas action to raise an ineffective assistance of counsel claim, as in this case, necessarily would suspend adoption proceedings and infuse uncertainty therein. Due to the fact that a habeas petition may be filed at any time;

*Johnson* v. *Commissioner of Correction,* 218 Conn. 403, 416, 589 A.2d 1214 (1991) (noting that no statute or other time limitation bars habeas petition); there exists, as the trial court noted in this case, a "frightening possibility that a habeas petition will negate the permanent placement of a child whose status had presumably been in limbo for several years."[24] Consequently, the state's interest as parens patriae militates against allowing the writ.

In refusing to extend the federal habeas corpus statute, 28 U.S.C. § 2254, to allow a parent to challenge, in federal court, a state judgment terminating parental rights, the United States Supreme Court recognized that the state's interest in finality is "unusually strong . . . ." *Lehman* v. *Lycoming County Children's Services Agency,* 458 U.S. 502, 513, 102 S. Ct. 3231, 73 L. Ed. 2d 928 (1982). "The grant of federal habeas would prolong uncertainty for children . . . possibly lessening their chances of adoption. It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty . . . ." Id.

Thus, we agree that "the state has a vital interest in expediting the termination proceedings" and that permitting the writ of habeas corpus as a means of raising claims of ineffective assistance of counsel and attacking the judgment would undermine that interest. *In re Alexander V.,* supra, 223 Conn. 565 (delaying termination proceedings for parental competency hearings undermines state's interest in protecting welfare of children); see also *Lassiter* v. *Dept. of Social Services,* supra, 452 U.S. 27 ("[s]ince the State has an urgent interest in the welfare of the child, it shares the parent's interest in an accurate and just decision").

---

[24] We note that Jonathan's adoption by the foster parents has been held in abeyance during the pendency of the habeas action and this appeal.

The final factor to consider gauges the "risk of an erroneous deprivation of [the private] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards . . . ." (Internal quotation marks omitted.) *In re Alexander V.,* supra, 223 Conn. 560. We conclude that the risk of error and the procedural alternatives that exist weigh against extending the writ of habeas corpus to permit a parent, whose parental rights have been terminated in a prior proceeding, to assert a claim of ineffective assistance of counsel.

We acknowledge, as did the trial court, that the potential for an erroneous termination of a parent's rights because of inadequate counsel represents a serious concern. See id., 561 (termination proceedings may result in complete and irrevocable severance of relationship between parent and child). We have indicated in previous decisions, however, that the trial judge is a "minister of justice" rather than strictly an "umpire in a forensic encounter . . . ." (Internal quotation marks omitted.) *In re Dodson,* 214 Conn. 344, 353, 572 A.2d 328, cert. denied, 498 U.S. 896, 111 S. Ct. 247, 112 L. Ed. 2d 205 (1990). Although as a trial judge must adhere to the dictates of impartiality, he or she, "nevertheless, has the duty to deter and correct misconduct of attorneys with respect to their obligations as officers of the court to support the authority of the court and enable the trial to proceed with dignity." Id., 354. Thus, a judge presiding over a proceeding wherein trial counsel had been woefully inadequate would not, consistent with judicial duty, sit idly by and permit the client to suffer the consequences. To be sure, the trial judge may be more inclined to vigilance in solemn proceedings, such as those terminating parental rights, wherein the indigent litigants have obtained court-appointed counsel.

Moreover, the current alternatives available to a parent, with which he or she may challenge the termination judgment, sufficiently guard against the risk that that

judgment had been rendered in the face of substandard legal representation. For instance, as the petitioner did in this case, the parent may pursue a direct appeal of the termination judgment. See *State ex rel. Juvenile Dept. of Multnomah County* v. *Geist*, 310 Or. 176, 187, 796 P.2d 1193 (1990) (*In re Geist*) (holding that challenges to adequacy of appointed trial counsel in parental rights termination proceeding reviewable only on direct appeal). In the event that the appointed trial counsel withdraws from the case, there exists a procedure in Connecticut whereby a second professional is appointed to explore any viable issues for an appeal. As noted previously, Practice Book § 35-4 (b) instructs the judicial authority, when appointed trial counsel has withdrawn from representing the indigent parent, to appoint a second attorney to review the file. See footnote 6 of this opinion.

Both the petitioner and the department, like the Oregon Supreme Court, note a potential problem with a direct appeal of the termination judgment. See *In re Geist*, supra, 310 Or. 192 n.16. In a case such as this, wherein a parent alleges ineffective assistance of counsel at the termination trial, the record may not contain the factual predicates sufficient to review, on direct appeal, the appointed attorney's adequacy. That is, if, as in the present case, a parent alleges that trial counsel had been inadequate due to his or her failure to proffer evidence, call certain witnesses or pursue arguments, then "it may be impossible to determine from the record on appeal whether the omitted evidence or argument would have made any difference in the outcome of the proceeding." Id. Moreover, as the Oregon Supreme Court acknowledged, "[i]t is neither realistic nor reasonable to expect that a parent's trial counsel will have objected at trial that counsel's advocacy was inadequate." Id., 184 n.9; see also *In re Alexander V.*, supra, 223 Conn. 571 n.13 (noting that "counsel to the parent in a termination proceeding may be reluctant to com-

pound the evidence of incompetence because it may jeopardize the defense of the parent's case and increase the risk of termination").

The department argues that in a case such as this, wherein the record may preclude a direct appeal of issues concerning the adequacy of counsel, the appellate courts should, "in the interest of justice," exercise supervisory authority and remand the case for further evidentiary hearings on the ineffective assistance of counsel claim and retain jurisdiction of the appeal. The department suggested at oral argument before this court that the Oregon Supreme Court had fashioned such a procedure. See *In re Geist*, supra, 310 Or. 192 n.16 ("[b]efore authorizing an evidentiary hearing, a court doubtless would require a threshold showing of specific allegations, including the names of witnesses to be called, the expected substance of their testimony, and an explanation of how that testimony would show that trial counsel was inadequate"). Ultimately, however, that court "express[ed] no view on the merit of the state's proposed procedure, or, indeed, as to the necessity of any procedure at all." Id.

Because we conclude that other means of vindicating the right to effective assistance of counsel exist through which an indigent parent may challenge a termination judgment, we see no need to utilize our supervisory authority to supplement the evidentiary record in direct appeals from such judgments in an effort to create an alternative to the habeas relief sought in this case. See *State* v. *Andrews*, 248 Conn. 1, 20, 726 A.2d 104 (1999) (supervisory authority is "a power that we exercise only with great caution and when clearly warranted by compelling circumstances").

We agree with the department, however, that General Statutes § 45a-719[25] provides a number of alternatives

[25] General Statutes § 45a-719 provides: "The court may grant a motion to open or set aside a judgment terminating parental rights pursuant to section 52-212 or 52-212a or pursuant to common law or may grant a petition for

through which a parent may attempt to open the final judgment of termination and assert a claim of ineffective assistance of counsel. The first option permits a motion to open the judgment in accordance with General Statutes § 52-212[26] or General Statutes § 52-212a.[27]

a new trial on the issue of the termination of parental rights, provided the court shall consider the best interest of the child, except that no such motion or petition may be granted if a final decree of adoption has been issued prior to the filing of any such motion or petition. Any person who has legal custody of the child or who has physical custody of the child pursuant to an agreement, including an agreement with the Department of Children and Families or a licensed child-placing agency, may provide evidence to the court concerning the best interest of the child at any hearing held on the motion to reopen or set aside a judgment terminating parental rights. For the purpose of this section, 'best interest of the child' shall include, but not be limited to, a consideration of the age of the child, the nature of the relationship of the child with the caretaker of the child, the length of time the child has been in the custody of the caretaker, the nature of the relationship of the child with the birth parent, the length of time the child has been in the custody of the birth parent, any relationship that may exist between the child and siblings or other children in the caretaker's household, and the psychological and medical needs of the child. The determination of the best interest of the child shall not be based on a consideration of the socioeconomic status of the birth parent or the caretaker."

[26] General Statutes § 52-212 provides: "Reopening judgment upon default or nonsuit. (a) Any judgment rendered or decree passed upon a default or nonsuit in the Superior Court may be set aside, within four months following the date on which it was rendered or passed, and the case reinstated on the docket, on such terms in respect to costs as the court deems reasonable, upon the complaint or written motion of any party or person prejudiced thereby, showing reasonable cause, or that a good cause of action or defense in whole or in part existed at the time of the rendition of the judgment or the passage of the decree, and that the plaintiff or defendant was prevented by mistake, accident or other reasonable cause from prosecuting the action or making the defense.

"(b) The complaint or written motion shall be verified by the oath of the complainant or his attorney, shall state in general terms the nature of the claim or defense and shall particularly set forth the reason why the plaintiff or defendant failed to appear.

"(c) The court shall order reasonable notice of the pendency of the complaint or written motion to be given to the adverse party, and may enjoin him against enforcing the judgment or decree until the decision upon the complaint or written motion."

[27] General Statutes § 52-212a provides: "Civil judgment or decree reopened or set aside within four months only. Unless otherwise provided by law and

These provisions allow a four month window from the date of judgment within which such a motion may be brought.[28]

Second, the principles governing the opening of judgments at common law may also provide an indigent parent a means of gaining a review of the adequacy of trial counsel at the termination proceeding. "It is a well-established general rule that even a judgment rendered by the court . . . can subsequently be opened [after the four month limitation] . . . if it is shown that . . . the judgment, was obtained by fraud . . . or because of mutual mistake." (Internal quotation marks omitted.) *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 466, 440 A.2d 159 (1981) (finding no abuse of discretion in denial of motion to open judgment where party did not claim fraud, duress or mutual mistake). Thus, when a judgment of termination is predicated on fraud or mutual mistake and the indigent's appointed counsel

except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. The continuing jurisdiction conferred on the court in preadoptive proceedings pursuant to subsection (h) of section 17a-112 does not confer continuing jurisdiction on the court for purposes of reopening a judgment terminating parental rights. The parties may waive the provisions of this section or otherwise submit to the jurisdiction of the court, provided the filing of an amended petition for termination of parental rights does not constitute a waiver of the provisions of this section or a submission to the jurisdiction of the court to reopen a judgment terminating parental rights."

In May, 2000, the General Assembly undertook a revision of the statutes governing the adoption of children from foster care. See Public Acts 2000, No. 00-137, § 1. Accordingly, the internal statutory references in § 52-212a were also changed. See Public Acts 2000, No. 00-137, § 16. Since the changes to § 52-212a were technical in nature, for purposes of clarity, we refer to the current revision of the statute.

[28] We note that § 52-212a expressly contemplates applying the four month limitation to judgments terminating parental rights by providing that the court does not maintain continuing jurisdiction over a termination judgment by virtue of § 17a-112 and that, therefore, the exception to the four month rule does not apply.

fails to address these issues, presumably rendering the assistance ineffective, the parent may have a remedy to open the judgment at common law.

Finally, as the department concedes, a parent may file a petition for a new trial. See General Statutes § 52-582.[29] Under this option, a parent whose rights have been terminated has three years within which to file a petition. General Statutes § 52-270[30] provides that the court may grant such a petition for "reasonable cause." Although we express no opinion as to whether a colorable claim of ineffective assistance of counsel always will require a court to grant a petition for a new trial under § 52-582, we note that this court has long recognized that "[t]he causes for which new trials may be granted . . . are only such as show that the parties did not have a fair and full hearing at the first trial; and the words 'or for other reasonable cause,' mean other causes of the same general character . . . ." *Etchells*

---

[29] General Statutes § 52-582 provides: "Petition for new trial. No petition for a new trial in any civil or criminal proceeding shall be brought but within three years next after the rendition of the judgment or decree complained of."

This year, the legislature amended this provision and added the following text, which is not relevant to the issues in this case: "[E]xcept that a petition based on DNA (deoxyribonucleic acid) evidence that was not discoverable or available at the time of the original trial may be brought at any time after the discovery or availability of such new evidence." See Public Acts 2000, No. 00-80, § 2. The statutory provision cited herein is the 1999 revision.

[30] General Statutes § 52-270 provides: "Causes for which new trials may be granted. (a) The Superior Court may grant a new trial of any action that may come before it, for mispleading, the discovery of new evidence or want of actual notice of the action to any defendant or of a reasonable opportunity to appear and defend, when a just defense in whole or part existed, or the want of actual notice to any plaintiff of the entry of a nonsuit for failure to appear at trial or dismissal for failure to prosecute with reasonable diligence, or for other reasonable cause, according to the usual rules in such cases. The judges of the Superior Court may in addition provide by rule for the granting of new trials upon prompt request in cases where the parties or their counsel have not adequately protected their rights during the original trial of an action.

"(b) An affidavit signed by any party or his or her attorney shall be presumptive evidence of want of actual notice."

v. *Wainwright*, 76 Conn. 534, 541, 57 A. 121 (1904) (construing predecessor statute empowering Court of Common Pleas to grant new trial for mispleading, discovery of new evidence, want of notice, or other reasonable cause).

Finally, we recognize that § 45a-719; see footnote 25 of this opinion; limits all of the available options by precluding the court from granting any motion or petition filed after a final decree of adoption has been entered. This limitation is evidence that the General Assembly contemplated the finality of termination proceedings wherein the child has been placed in a permanent adoptive home. See *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 29, 716 A.2d 78 (1998) (fundamental objective of statutory construction is to ascertain and give effect to intent of legislature). Were we to accede to the position advocated by the petitioner in this case and conclude that due process requires the writ of habeas corpus as a procedural means of attacking collaterally the termination judgment, those judgments and the attendant adoption decrees potentially would be subject to future attack without any time limits thereon.

In the case before us, a final decree of adoption regarding Jonathan has been held in abeyance by the ongoing litigation, including the petitioner's direct appeals and the habeas action. See footnote 24 of this opinion. Extending the uncertainty and delay regarding Jonathan's permanent placement contravenes the policy underlying the statutory framework governing the finality of termination decisions. Indeed, permitting a habeas writ as a vehicle in which a parent whose rights have been terminated may attack that judgment collaterally, unbounded by constraints within which time such a petition may be filed, would further undermine

the legislative pronouncements in this area of the law.[31] See *State ex rel. E.H.* v. *A.H.*, 880 P.2d 11, 13 n.2 (Utah App. 1994) ("[t]o allow habeas corpus challenges in termination proceedings would unacceptably require that children remain indefinitely in temporary foster care"). Moreover, even in habeas actions properly brought to challenge custody, this court has recited consistently that "the welfare of the child is the paramount consideration . . . ." (Internal quotation marks omitted.) *McGaffin* v. *Roberts*, 193 Conn. 393, 403, 479 A.2d 176 (1984), cert. denied, 470 U.S. 1050, 105 S. Ct. 1747, 84 L. Ed. 2d 813 (1985). As such, we are unwilling to infect the delicate and serious process governing the placement of foster children in permanent adoptive homes with perpetual uncertainty where the General Assembly has not directed us to do so.

The judgment is affirmed.

In this opinion NORCOTT, PALMER and SULLIVAN, Js., concurred.

MCDONALD, C. J., dissenting. I dissent from the majority's decision that the writ of habeas corpus is not the appropriate vehicle to raise the claim of ineffective

---

[31] We note that No. 00-137, § 5, of the 2000 Public Acts, effective October 1, 2000, provides in relevant part: "(a) In order to achieve early permanency for children, decrease children's length of stay in foster care and reduce the number of moves children experience in foster care, the Commissioner of Children and Families shall establish a program for concurrent permanency planning.

"(b) Concurrent permanency planning involves a planning process to identify permanent placements and prospective adoptive parents so that when termination of parental rights are granted by the court pursuant to section 17a-112 of the general statutes, as amended by this act, or section 45a-717 of the general statutes, permanent placement or adoption proceedings may commence immediately . . . ." Thus, our conclusion that permitting a habeas petition to challenge a termination judgment, which would necessarily suspend permanent placement and adoption efforts, would contravene legislative intent, is bolstered by this provision, which requires the department to develop a plan to commence such placement "immediately" following a termination judgment.

assistance of counsel in the proceedings to terminate the petitioner's parental rights.

In this case, the petitioner claimed that his two court-appointed attorneys in the termination proceeding in 1998 gave him ineffective assistance that led to his abortive pro se appeal. In 2000, the trial court dismissed the petition for the writ filed in 1999.

The majority assumes that the petitioner did have the right to effective counsel. That assumption is unnecessary. In *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 32, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), the United States Supreme Court decided that the decision whether to appoint counsel in termination proceedings is "to be answered in the first instance by the trial court, subject, of course, to appellate review." In this case, the trial court did determine that the appointment of counsel was required.

As to the question of whether the appointed counsel must be effective, in *State* v. *Anonymous*, 179 Conn. 155, 160, 425 A.2d 939 (1979), this court stated that "[b]ecause of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel." In *Lozada* v. *Warden*, 223 Conn. 834, 838, 613 A.2d 818 (1992), we also concluded that appointed counsel must be effective counsel. "It would be absurd to have the right to appointed counsel who is not required to be competent." Id.

The majority's sweeping conclusion that the writ may not be used to vindicate that right to effective counsel is based upon the interest of the child in the finality of the termination and the availability of other remedies. Those other remedies, however, are subject to time limits between four months; General Statutes §§ 52-212 and 52-212a; and three years. General Statutes §§ 52-

270 and 52-582. Once the time has run, the parent is without any remedy.

The majority refers to *Lehman* v. *Lycoming County Children's Services Agency*, 458 U.S. 502, 513, 102 S. Ct. 3231, 73 L. Ed. 2d 928 (1982), holding that federal habeas corpus may not be used to challenge a state's termination of parental rights owing to the interest in finality. The court in *Lehman*, however, also recognized that state habeas corpus had traditionally been used in child custody cases in many of the states and referred to *Boardman* v. *Boardman*, 135 Conn. 124, 138, 62 A.2d 251 (1948). *Boardman* is but one of a long line of Connecticut cases upholding the use of the writ by a parent to contest the custody of a child at any time.

Custodial rights are part of the bundle of parental rights. As custody and parental rights are coexistent and inseparable, it would be necessary for the same reason to deny the use of the writ to question a child's custody. Allowing the state's interest in finality to mitigate against use of the writ here would require us to overrule *Boardman* and years of precedent.

While I do not agree that a trial court should dismiss every writ, I would hold that the writ might be dismissed on discretionary "prudential" grounds. *Lehman* v. *Lycoming County Children's Services Agency*, supra, 458 U.S. 519–20 (Blackmun, J., dissenting). This would allow a trial court in its discretion and in only "the most extraordinary cases" to issue the writ. Id., 526 (Blackmun, J., dissenting). There are, unfortunately, those extraordinary cases where the writ may be needed. Such a rule would allow the writ to issue only in those rare cases that demanded the writ's unique "capacity to . . . cut through barriers of form and procedural mazes . . . ." *Harris* v. *Nelson*, 394 U.S. 286, 291, 89 S. Ct. 1082, 22 L. Ed. 2d 281 (1969).

I would require the relator to do much more than simply allege in general terms that he did not have competent counsel. In this case, the petitioner merely asserted that his appointed trial counsel failed to proffer evidence, call particular witnesses or pursue arguments. He also claimed that his second appointed counsel "failed to comply with the requirements of his appointment, and neither filed an appeal on behalf of the petitioner, nor made any effort to notify the court that there were grounds for filing an appeal." A petitioner must allege facts detailing his claim and allege further facts demonstrating that the issuance of the writ would be in the best interests of the child.

The trial court would then assess the circumstances of each case before it and might determine that the writ should be dismissed. In this case, the trial court would consider the petitioner's age of sixty years, his ongoing heroin addiction, and the fact that he admitted that he was not yet ready to parent Jonathan. "On such a record, I believe that the [trial] [c]ourt could have found, as a discretionary matter, that petitioner had not made a sufficient showing that [he] acted in the interests of the [child] to warrant issuing [him] the writ . . . ." *Lehman* v. *Lycoming County Children's Services Agency*, supra, 458 U.S. 525 (Blackmun, J., dissenting).

The majority's denial of the writ in all termination cases does not serve the best interests of children. The majority cites a number of cases that assert that parental rights are "essential, basic civil rights of man . . . ." (Internal quotation marks omitted.) *In re Alexander V.*, 223 Conn. 557, 561, 613 A.2d 780 (1992). We should not forever deny a petitioner and his child the writ in order to challenge this gravest of rulings—the irrevocable loss of a child.

Accordingly, I dissent.