MEMORANDUM OF DECISION RE NEGLECT AND UNCARED FOR PETITION
FACTS
On 5/02, an Order of Temporary Custody was obtained by the Department of Children of Families (DCF) for the child Shakara B. (Shakara), born in 4/02. On the same date, DCF filed a neglect petition concerning the same child, alleging that Shakara was neglected and uncared for. Specifically, the petition indicated that Shakara was neglected, in that she was being denied proper care and attention physically, educationally, emotionally or morally, and that she was being permitted to live under conditions, circumstances or associations injurious to well-being. The petition also alleged that she was uncared for, in that her home could not provide the specialized care which her physical, emotional or mental condition required.
On 5/02, Shakara's mother, Lateisha B. (Lateisha), appeared in Superior Court for Juvenile Matters (M., J.) and was appointed both counsel and a guardian ad litem. The putative father Donuel B. (Donuel) was defaulted. A hearing on the OTC was set down for 5/02.
On 5/02, the OTC was sustained by agreement (M., J.). The court ordered a competency examination of Lateisha and she entered denials to the allegations in the petition.
On 6/02, Donuel was defaulted as to the neglect allegations.
On 8/02, DCF filed an amended neglect petition, adding Anthony P. (Anthony) as the putative father of Shakara. He entered denials to the CT Page 1716 allegations. The petition and attached amended summary of facts indicated that:
 The respondent mother Lateisha who was diagnosed as being mentally retarded, admitted she was unable to adequately care for the child;
 The child had feeding difficulties which Lateisha was unable to address;
 The then respondent father Anthony was not a resource due to his unstable living situation, and;[2]
There were no appropriate relatives available to care for the child.
On 1/03, the petition against Anthony was dismissed by this court, due to the results of paternity testing that excluded Anthony as the father of Shakara.
On 1/03, the neglect petition was heard before this court.[3]
 LAW
Pursuant to C.G.S. Section 46b-120 et seq. a child may be found to be "neglected" if that child is being denied proper care and attention physically, educationally, or morally, or is being permitted to live under conditions, circumstances or association injurious to her well-being, while a child may be found to be "uncared for" if that child is homeless or that her home cannot not provide the specialized care which her physical, emotional or mental condition requires.
The standard of proof is a fair preponderance of the evidence, which must be established by DCF. See In re Jonathan M., 255 Conn. 208, 211
n. 3, 764 A.2d 739 (2001).
 ADJUDICATION
Based on the probative evidence produced at trial, the court concludes that the petitioner has proven, by a fair preponderance of the evidence, that the child Shakara is both neglected and uncared for. The respondent mother Lateisha, who has been diagnosed as being mentally retarded, is clearly unable to care for a child.
The social study indicates that Lateisha was referred by the Stamford Public Schools to the Child Guidance Center of Southern Connecticut for a psychiatric diagnostic interview due to unexplained repeated outbursts of CT Page 1717 rage and temper tantrums in class, which according to school officials, were unprovoked and had increased in frequency and intensity. A Stamford Public School psychologist concluded she had a primary disability of educable mental retardation. Lateisha was educationally placed at CES (Cooperative Educational Services) in 1985, which was geared to the educational needs of those with special needs and who could not be maintained in a regular school setting.
Lateisha, who has a history of services through the Department of Mental Retardation (DMR), is currently not receiving services. It appears she has not received services since moving into the Waterbury area from Bridgeport about four years ago. At that time, her whereabouts became unknown to DMR. DMR offers services to families on a voluntary basis and it was assumed Lateisha no longer needed services from DMR. In 6/02, DCF made a referral to DMR on her behalf. Lateisha's case records will be transferred from the Bridgeport to the Waterbury DMR office in order for her to receive services.
This respondent mother has a history with the Department dating back to 9/98, for physical neglect and inadequate supervision of her then newborn daughter, Kastar B. (Kastar). In September 1998, Lateisha delivered Kastar at Park City Hospital in Bridgeport. During the delivery, Lateisha was threatening staff because they were touching her in order to assist her in giving birth. Lateisha was referred to the Child Guidance Healthy Family Program, a program that provides services for at risk first time mothers. Due to her limited judgment of the infant's needs, Lateisha's mental health limitations, as she has been diagnosed mentally retarded, and her non-compliance with services, guardianship of Kastar was granted to the paternal grandfather, Philip B. (Philip), in May 2000, at Superior Court-Juvenile Matters in Bridgeport.
In 6/02, Dr. David K. conducted a Competency Evaluation on Lateisha and reported her "intellectual deficits are permanent and unrestorable." He further stated that Lateisha's mental retardation "is chronic, disabling and incurable."[4]
Lateisha's weaknesses lie in the fact she is mentally retarded and has limited judgment and parenting abilities. She has demonstrated poor hygiene and does not possess the ability to care for herself physically or financially. Lateisha is currently incarcerated and has no family supports. She is unemployed. Lateisha has become argumentative and oppositional during visits with Shakara. Lateisha has another child who she relinquished custody of to a family member due to not being able to appropriately parent this child. The court will indicate that the State has also proven by a fair preponderance of the evidence that cause for CT Page 1718 the findings of neglect and uncared for predated the filing of the original petition.
The court is not required to wait until the neglect or the lack of care has actually been visited upon the child. The court is allowed to take action when the potential for harm and abuse to a child exists. See In reMichael D., 58 Conn. App. 119 (2000).
Based upon all of the foregoing, the court finds that the State has established by a fair preponderance of the evidence that Shakara has been neglected on the grounds that she has both been denied proper care. The court also finds that the State has established by a fair preponderance of the evidence that Shakara has been uncared for, in that her home could not provide the specialized care which her, physical, emotional or mental condition required. Therefore, the court adjudicates Shakara both neglected and uncared for.
 DISPOSITION
Once the court decides adjudicates that a child has been either neglected or uncared for, the court is then required to decide what disposition is in the best interest of the child. In re Candace H.,63 Conn. App. 493 (2001).
In this matter, the respondent mother Lateisha is currently incarcerated. She has substantial issues of mental retardation that call into question her ability to care for herself, much less a young child. Dr. K. described her mental retardation as "chronic, disabling and incurable." She has already lost custody of her older child, due to her inability to care for her. Prior to the filing of the amended petition, DCF did have an opportunity to work with Latiesha in reference to the parenting problems which the petition refers to. The social study indicates that, during her visits with Shakara, Lateisha has presented with poor hygiene. During a supervised visit in 5/02, Lateisha became irate and began yelling at this worker. Lateisha began to bang her head into the wall. Repeated efforts to redirect Lateisha were to no avail. Lateisha calmed down when she was told the visit would need to end due to safety concerns. During this visit, Lateisha needed to be prompted and directed with regards to caring for her child. Lateisha has been observed to hold Shakara but not talk with or make eye contact with her. Lateisha is observed to change Shakara or feed her after the worker makes the suggestions to her. Lateisha appears clumsy and unsure of herself as she performed these simple tasks.
During another supervised visit with Shakara in 6/02, Lateisha was CT Page 1719 observed to be irate and oppositional. Lateisha began to yell and cry during this visit after being informed her visit would end after one hour as the child had a medical appointment. Lateisha did not interact with her child and continued to display a temper tantrum. Efforts were made to appease Lateisha such as offering her to have the remaining hour of her visit after the medical appointment or to reschedule her visit for another day in the week to have her full two hour visit with Shakara but she refused both suggestions. The visit was ended and Shakara was removed from the visiting room for her safety due to Lateisha's behavior.
There are no family resources available to care for Shakara. The social study reports that she is doing well in the foster home, with no problems presently reported by the foster mother. Obviously, the only placement for this child is with DCF, and this placement is obviously in her best interests.
Therefore, the court commits Shakara to the care and custody of the Department of Children and Families until further order of the court. DCF will file all statutorily required reports and plans as required.
Taylor, J.