******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE JULIANY T.*
## (AC 47376)

Alvord, Cradle and Harper, Js.

*Syllabus*

The respondent father appealed from the judgment of the trial court terminating his parental rights as to his minor child. He claimed, inter alia, that his counsel provided ineffective assistance that constituted reversible error, as the deficient performance was of such a magnitude that it created structural error pursuant to *United States* v. *Cronic* (466 U.S. 648). *Held*:

This court declined to presume that the respondent father was prejudiced by his counsel's performance, as the presumption of prejudice standard set forth in *Cronic* does not extend to child protection matters.

The respondent father could not prevail on his claim of ineffective assistance of counsel, as he inadequately briefed the issue of prejudice.

This court rejected the respondent father's claim that he had a constitutional right to a hybrid habeas fact-finding proceeding in the trial court to more fully develop the record in support of his claim that he was denied the effective assistance of counsel, citing the precedent of the Supreme Court in *In re Jonathan M.* (255 Conn. 208) that there were other means of vindicating the right to the effective assistance of counsel through which an indigent parent may challenge a termination judgment, and this court declined to exercise its supervisory authority over the administration of justice to afford the father a right to such a fact-finding proceeding.

Argued September 10, 2024—officially released February 3, 2025**

*Procedural History*

Petition by the Commissioner of Children and Families to terminate the respondents' parental rights with respect to their minor child, brought to the Superior Court in the judicial district of Hartford, Juvenile Matters, and tried to the court, *Nguyen-O'Dowd, J.*; judgment terminating the respondents' parental rights, from

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

** February 3, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

which the respondent father appealed to this court. *Affirmed.*

*Matthew C. Eagan*, assigned counsel, for the appellant (respondent father).

*Nisa Khan*, assistant attorney general, with whom, on the brief, was *William Tong*, attorney general, for the appellee (petitioner).

*Opinion*

HARPER, J. The respondent father, Julio T., appeals from the judgment of the trial court, rendered in favor of the petitioner, the Commissioner of Children and Families, terminating his parental rights with respect to his minor child, Juliany.[1] The respondent raises three claims on appeal, each of which emanates from his contention that he was denied the effective assistance of counsel at trial, in violation of his due process rights under the fourteenth amendment to the federal constitution[2] and article first, § 10, of the Connecticut constitution.[3] First, he claims that his counsel's allegedly deficient performance "was of such magnitude that it created structural error as set forth in *United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)," and is therefore per se reversible error. Second, he claims that he has a due process right to a hybrid

---

[1] The court also terminated the parental rights of Juliany's mother, Melanie R. Because she has not appealed from that judgment, we refer to Julio T. as the respondent and to Melanie R. by name throughout this opinion. Unless necessary to our analysis of the claims raised by the respondent, in this opinion we need not and do not address the court's findings and conclusions with respect to Melanie R.

[2] The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ." U.S. Const., amend. XIV.

[3] Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

habeas fact-finding proceeding in the trial court to further develop the record as to his ineffective assistance of counsel claim because "the procedures available to him to vindicate his right to effective assistance of counsel are inadequate." He further claims that, if he does not have a due process right to a hybrid habeas fact-finding proceeding, this court should exercise its supervisory authority to create one.[4] We affirm the judgment of the trial court and decline the respondent's request that we exercise our supervisory authority.

The following facts, which the court found by clear and convincing evidence or which are otherwise undisputed, and procedural history are relevant to our resolution of this appeal. Juliany was born in December, 2010. Shortly thereafter, in January, 2011, the respondent was arrested and charged with murder. In October, 2013, the respondent was found guilty of murder and, in December, 2013, he was sentenced to fifty years of incarceration. The respondent's maximum release date is January, 2061.

Because he was incarcerated, the respondent was not able to provide care for Juliany, who remained in the care of her mother, Melanie R. See footnote 1 of this opinion. Melanie R. suffered from mental health and substance abuse issues and had "a child protection history dating back to 2011, for medical neglect, educational neglect, physical neglect, physical abuse, and lack of supervision."[5] Juliany "is a special education student

---

[4] The attorney for the minor child has filed a statement adopting the "factual statements set forth in the [petitioner's] brief" but takes no position as to whether the respondent has a constitutional right to the effective assistance of counsel or a hybrid habeas fact-finding proceeding. She maintains, nonetheless, that, if such rights exist, any violations thereof are "not so prejudicial as to require a reversal of the termination petition as set forth in the [petitioner's] brief" and argues that any further delay in the process of securing a permanent home and legal status would not be in Juliany's best interest.

[5] Melanie R. has two other minor children, Precious R. and Joshua R. The court terminated her parental rights as to them, as well. The respondent is

with her primary disability as emotional disturbance due to changes in her mood and low frustration levels." Juliany has "specialized mental health needs," "has had between eight to nine foster care placements," and has been "qualified for placement in a therapeutic foster home."[6]

"On November 1, 2019, [the Department of Children and Families (department)] received a referral from Juliany's school due to her emotional and behavioral challenges." Melanie R. did not cooperate with the department by engaging in services following this referral, and, on January 21, 2020, the petitioner filed a neglect petition as to Juliany. On March 30, 2020, the petitioner sought and was granted an ex parte order of temporary custody as to Juliany and the court, *Lobo, J.*, issued preliminary specific steps for the respondent. On September 30, 2020, the court, *Dannehy, J.*, adjudicated Juliany neglected, committed her to the care and custody of the petitioner and issued final specific steps for the respondent.[7] The respondent "stood silent as to the neglect adjudication."

After Juliany was removed from Melanie R.'s care in 2020, the department offered the respondent reunification services by encouraging his participation in programs or services available through the Department of

---

not the father of Precious and Joshua, and his claims in this appeal do not pertain to them.

[6] At the time of trial, Juliany had been residing in a therapeutic foster home since April, 2023.

[7] "Specific steps provide notice and guidance to a parent as to what should be done to facilitate reunification and prevent termination of rights." (Internal quotation marks omitted.) *In re Amias I.*, 343 Conn. 816, 822 n.6, 276 A.3d 955 (2022). The final specific steps the court issued for the respondent included, among other things, participating in services provided by the Department of Correction (DOC) regarding parenting, substance abuse and mental health and signing "releases allowing [the department] to communicate with service providers to check on your attendance, cooperation and progress toward identified goals, and for use in future proceedings with this court."

Correction (DOC),[8] and it facilitated phone calls and offered him virtual and in person visits with Juliany.[9] The department's "social workers regularly contacted [the respondent] and his counselor to discuss his participation in services while incarcerated. He completed the VOICES program in June, 2020, which is a victim impact program." The department did not know whether the respondent completed any other programs, however, because he failed to sign a release of information in accordance with the court-ordered specific steps. See footnote 7 of this opinion.

On December 22, 2022, the petitioner filed a petition to terminate the respondent's parental rights on the grounds that (1) Juliany had been abandoned by the respondent "in the sense that the [respondent] failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child," (2) Juliany previously had been adjudicated neglected and the respondent had failed to achieve a sufficient degree of rehabilitation, and (3) the respondent had no ongoing parent-child relationship with Juliany. A trial on the petition for the termination of parental rights was held on June 6, 2023, before the court, *Nguyen-O'Dowd, J.* The petitioner presented the testimony of two witnesses, department social workers Mary Daries and Paola Tierinni, and entered eighteen exhibits. After consulting with his counsel, the respondent testified. He did not call any other witnesses or enter any exhibits.

[8] Because the respondent was incarcerated, the department was unable to directly provide him with services.

[9] Since 2020, the respondent had some contact with Juliany, predominantly by telephone. The record reflects one in person visit in June, 2021. Between August, 2021, and February, 2023, however, Juliany refused to have any contact with the respondent, and the department kept him updated about her. Juliany agreed to resume contact with the respondent in 2023, provided the contact was facilitated by relatives, and this contact had occurred approximately monthly as of the time the court issued its decision. The record does not specify whether this resumed contact has been telephonic, in person, or both.

After the respondent rested his case, the petitioner's counsel advised that the petitioner was withdrawing two of the three alleged grounds for termination of parental rights and was proceeding solely on the ground set forth in General Statutes § 17a-112 (j) (3) (B) (i), which provides in relevant part that Juliany "has been found in a prior proceeding to have been neglected, abused or uncared for and the . . . [respondent] has . . . failed to achieve the degree of personal rehabilitation that would encourage the belief that within a reasonable time, considering the age and needs of [Juliany] . . . he . . . could assume a responsible position in the life of [Juliany] . . . ." The petitioner's counsel then argued, in closing argument, that the petitioner had satisfied her burden to prove this ground with evidence that established that the respondent failed to comply with the court-ordered specific steps by providing releases to confirm his engagement in, or successful completion of, DOC services regarding parenting, substance abuse and mental health. The petitioner's counsel also argued that the petitioner made reasonable efforts to reunify the respondent with Juliany and had proven the respondent's inability or unwillingness to benefit from those efforts. Finally, the petitioner's counsel argued that the evidence established that termination of the respondent's parental rights was in Juliany's best interest.

The respondent's counsel then made the following closing argument: "On behalf of [the respondent], I do believe the [petitioner] has appropriately adopted the grounds, ground B, failure to rehabilitate. I think the others are not appropriate.

"As to failure to rehabilitate, [the respondent is] in an unfortunate situation where he's not able to rehabilitate because he is incarcerated. So, his actions or inactions are not wilful, they're consequential, and I don't want to belabor that.

"There is enough today to hear that the child may seek to have a relationship with the [respondent] through the [respondent's] family. It's very difficult to predict the future, but as she matures perhaps she can work out some relationship regardless of the decision of this court. Whether the court decides to terminate the rights of [the respondent] to his child, it doesn't mean the court can terminate any affection or any desire to be a part of the [respondent's life] at some point in time. So, there's enough there to say that Juliany may seek some relationship with [the respondent] at some point in time regardless of the outcome. So, I just wanted to emphasize that [the respondent's] behavior is not wilful.

"His testimony today echoes the reality when you're sentenced for a long time, for practical reasons the [DOC] tends to favor those inmates who have lesser time to serve. And where the time to serve is greater, for efficacy it's distributed inequitably. So, I just want to emphasize what [the respondent] made clear: It's not that he doesn't want to. It's not wilful. He did the best that he could on what was provided, and he's not in complete control of the [DOC]."

On August 21, 2023, the court issued a memorandum of decision in which it terminated the respondent's parental rights. The court found by clear and convincing evidence that the department had made reasonable efforts to reunify Juliany with the respondent and that the respondent was unable or unwilling to benefit from reunification efforts.

The court also found that the respondent had failed to achieve an appropriate degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of Juliany, he could assume a responsible position in her life. In reaching this conclusion, the court observed that the

respondent "has been incarcerated throughout the pendency of this case" and that he had been on notice since early 2020 "as to the expectations of him in the specific steps ordered by the court." To this end, the court acknowledged that the respondent "took advantage of the programs that were available to him" but determined that "this is not enough given Juliany's age[10] and needs and the length of time she has been in [the department's] care. There is still more work to do to ensure that the respondent . . . understands Juliany's emotional and mental health needs." (Footnote added.) Noting that the respondent's maximum release date "is well beyond when Juliany will reach the age of majority," the court concluded that the respondent "would be unable to rehabilitate in time for Juliany." It specified that "the only reasonable conclusion *to be made from the credible testimony and evidence* is that the respondent . . . has failed to attain a level of rehabilitation given Juliany's age and needs" and determined "that the petitioner has shown by clear and convincing evidence that the respondent . . . has failed to rehabilitate pursuant to § 17a-112 (j) (3) (B) (i)." (Emphasis added.)

In the dispositional phase of the proceedings, the court made findings as to each of the seven statutory factors set forth in § 17a-112 (k) and concluded that the termination of the respondent's parental rights was in Juliany's best interest. Accordingly, the court rendered judgment terminating the respondent's parental rights and appointing the petitioner as Juliany's statutory parent. This appeal followed.

Each of the respondent's claims on appeal derives from his contention that he was denied the effective assistance of counsel at trial. See *In re Jonathan M.*, 255 Conn. 208, 235, 764 A.2d 739 (2001) (confirming

___

[10] Juliany was twelve years old at the time of trial.

that parent may challenge adequacy of trial counsel in parental rights termination proceedings by way of direct appeal). The respondent argues that his counsel's performance was deficient because he conceded that the petitioner had proven the case for termination when he stated during his closing argument that "the [petitioner] has appropriately adopted the grounds, ground B, failure to rehabilitate." The following principles, therefore, guide our review.

"In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. . . . Because of the substantial interests involved, a parent in a termination of parental rights hearing has the [statutory] right not only to counsel but to the effective assistance of counsel. . . . Moreover, a parent whose rights have been terminated may assert, on direct appeal, that he or she was deprived of the right to the effective assistance of counsel at trial. . . . In determining whether counsel has been ineffective in a termination proceeding, [this court has] enunciated the following standard: The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law. . . . The respondent must prove that [counsel's performance] fell below this standard of competency and also that the lack of competency contributed to the termination of parental rights. . . . *A showing of incompetency without a showing of resulting prejudice . . . does not amount to ineffective assistance of counsel.*" (Citations omitted; emphasis added; internal quotation marks omitted.) *In re Peter L.*, 158 Conn. App. 556, 563, 119 A.3d 23 (2015). "Even where a parent in a termination proceeding has a constitutional, rather than merely statutory, right to counsel, the parent must

show resulting prejudice to prevail on a claimed violation of that right." *In re Jaelynn K.-M.*, 229 Conn. App. 371, 382, 327 A.3d 1013 (2024).

"In making such a claim, it is the responsibility of the respondent to create an adequate record pointing to the alleged ineffectiveness and any prejudice the respondent claims resulted from that ineffectiveness. . . . In the absence of findings by the trial court in this regard, we directly review the trial court record." (Citation omitted; internal quotation marks omitted.) *In re Wendy G.-R.*, 225 Conn. App. 194, 205, 314 A.3d 1029, cert. denied, 349 Conn. 916, 316 A.3d 357 (2024).

I

The respondent's first claim on appeal is that he had a federal and state constitutional right to the effective assistance of counsel during the termination proceedings and that his "[t]rial counsel's deficient performance represented structural error" requiring an automatic reversal of the judgment and an order for a new trial. He acknowledges that, "[i]n most cases, a respondent alleging ineffective assistance of counsel in a termination hearing must prove both that the trial counsel's performance was deficient and that the lack of competency contributed to the termination of parental rights" but argues that, "[i]n this case . . . trial counsel's concession that the [petitioner] had proven that the respondent had failed to rehabilitate represents a breakdown in the adversarial process such that the process itself should be deemed unreliable." As such, he maintains that we should presume that he was prejudiced by his counsel's alleged incompetency and reverse the judgment in accordance with the standard set forth in *United States* v. *Cronic*, supra, 466 U.S. 658.

The petitioner claims, in response, that the respondent's right to the effective assistance of counsel is not constitutional in nature and that, even it if was, this

court should not "import *Cronic* . . . into the child protection context," given that "our Supreme Court has declined to adopt an automatic reversal rule that would forgo a harmlessness analysis in child protection cases." The petitioner maintains, therefore, that the respondent must demonstrate both his counsel's incompetence and prejudice resulting therefrom to prevail on his claim of ineffective assistance of counsel and that he has failed to do so. We agree with the petitioner and conclude that, assuming that the respondent had a constitutional right to the effective assistance of counsel at the termination hearing; see *In re Jonathan M.*, supra, 255 Conn. 225 (noting that parent "is constitutionally entitled to the effective assistance of counsel only if he had a constitutional right to appointed counsel in the termination proceeding");[11] *Cronic*'s presumption

---

[11] The parties agree that whether the respondent had a constitutional right to the effective assistance of counsel under the fourteenth amendment to the federal constitution depends on the outcome of the balancing test set forth in *Lassiter* v. *Dept. of Social Services*, 452 U.S. 18, 27–32, 101 S. Ct. 2153, 68 L. Ed. 2d 640 (1981), and its progeny. "[I]n *Lassiter* . . . the United States Supreme Court considered and rejected a claim that the due process clause of the fourteenth amendment requires the appointment of counsel for indigent parents in every parental status termination proceeding. . . . The court read its prior cases as establishing a presumption that an indigent litigant has a right to appointed counsel only when his or her physical liberty is at stake. . . . The court then applied the due process balancing test set forth in *Mathews* v. *Eldridge*, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)—weighing the competing private and governmental interests at stake and the risk of an erroneous decision in the absence of appointed counsel—to determine whether an indigent parent's interest in obtaining the assistance of counsel is sufficiently compelling to overcome that presumption. . . .

"Despite [marshaling] a number of potentially convincing arguments in favor of recognizing a right to counsel . . . the court ultimately declined to hold that due process requires the appointment of counsel whenever a state seeks to terminate the parental rights of an indigent parent. . . . Instead, the court held that whether the federal constitution requires the appointment of counsel is a fact specific determination that must be made by balancing the *Mathews* factors on a case-by-case basis. . . . The court further cautioned that, in light of the presumption against the right to appointed counsel in the absence of a potential deprivation of physical liberty, such a right would exist only [i]f, in a given case, the parent's interests

of prejudice standard does not extend to "this case and other child protection cases where there is a complete breakdown in the adversarial system," as the respondent urges.[12]

Because the respondent's claim is strictly predicated on the applicability of the "standard used by our reviewing courts in *Cronic*," we begin there. In *Cronic*, the United States Supreme Court considered a defendant's appeal from his conviction of mail fraud based on his claim that his sixth amendment right to the effective assistance of counsel[13] had been violated during his criminal trial. *United States* v. *Cronic*, supra, 466 U.S. 651, 658. The court recognized in *Cronic* that "[a]n accused's right to be represented by counsel is a fundamental component of our criminal justice system"; id., 653; and that that right "is the right to the effective assistance of counsel." (Internal quotation marks omitted.) Id.,654. The court expressed concern that, "[u]nless the accused receives the effective assistance

[are] at their strongest, the [s]tate's interests [are] at their weakest, and the risks of error [are] at their peak . . . ." (Citations omitted; internal quotation marks omitted.) *In re Amias I.*,343 Conn. 816, 833 n.18, 276 A.3d 955 (2022). With these principles in mind, we assume without deciding that the respondent had a federal constitutional right to the effective assistance counsel. We need not further assume, therefore, that article first, § 10, of the Connecticut constitution independently confers such a right. See *In re Taijha H.-B.*, 333 Conn. 297, 327, 216 A.3d 601 (2019).

[12] The petitioner also argues that, even if the presumption of prejudice standard set forth in *Cronic* is extended to child protection matters, that standard is not implicated by the circumstances of this case. Because we conclude that this standard is not applicable in the context of this child dependency proceeding, we do not address this argument.

[13] The sixth amendment to the United States constitution provides in relevant part: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const., amend. VI. We note that our Supreme Court "has held that, in termination of parental rights proceedings, parents have no right to counsel under the sixth amendment . . . which [applies] only to criminal defendants," and the respondent does not argue otherwise in this appeal. *In re Amias I.*, 343 Conn. 816, 832 n.17, 276 A.3d 955 (2022), citing *State* v. *Anonymous*, 179 Conn. 155, 159–60, 425 A.2d 939 (1979).

of counsel, a serious risk of injustice infects the trial itself"; (internal quotation marks omitted) id., 656; and explained that "the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial." Id., 658. As such, although the court acknowledged the presumption that an accused's "lawyer is competent to provide the guiding hand that the defendant needs" and maintained that "the burden rests on the accused to demonstrate a constitutional violation," it nonetheless identified three situations involving circumstances "so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Id., 658. Specifically, where there is a "complete denial of counsel" during a critical stage of the proceedings, where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing"; id., 659; and where surrounding circumstances make it unlikely that any lawyer could provide effective assistance, prejudice resulting from ineffective assistance may be presumed. Id., 659–60; see also *Leon* v. *Commissioner of Correction*, 189 Conn. App. 512, 532, 208 A.3d 296 (explaining that, in *Cronic*, court "established a narrow exception to the general two part . . . test for determining whether a petitioner's [sixth amendment] right to the effective assistance of counsel has been violated"), [14] cert. denied, 332 Conn. 909, 209 A.3d 1232 (2019).

The respondent argues that, by conceding that the petitioner had proven his failure to rehabilitate, his

---

[14] That two part test, set forth in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), is the same as the two part test the respondent must satisfy, in the absence of an exception, to establish ineffective assistance of counsel in the termination proceeding that gives rise to this appeal. See *In re Peter L.*, supra, 158 Conn. App. 563. Under *Strickland*, a petitioner cannot establish a violation of his sixth amendment right to counsel without first demonstrating that (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Strickland* v. *Washington*, supra, 687.

"counsel failed entirely to subject the [petitioner's] case to meaningful adversarial testing" as contemplated by *Cronic*, and that this error "was of a magnitude significant enough that [this court] could conclude that [he] was, in effect, unrepresented during a critical phase of the termination trial." He maintains, therefore, that this court should treat his counsel's concession as structural error by deeming "the process itself . . . presumptively unreliable" and reversing the judgment. See *In re Amias I.*, 343 Conn. 816, 840, 276 A.3d 955 (2022) ("[s]tructural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected" (internal quotation marks omitted)). Our Supreme Court's decision in *In re Amias I.*, however, forecloses the respondent's claim.

In *In re Amias I.*, the respondent mother appealed from the judgments of the trial court terminating her parental rights to her three children. Id., 818–19. The respondent claimed that the trial court violated her children's constitutional right to conflict free representation by failing to inquire into whether the attorney appointed to represent them had a conflict of interest and that the court should treat that failure as structural error subject to automatic reversal. Id., 819–20, 830. Our Supreme Court explained, however, that, on previous occasions when it had applied the structural error doctrine, it had "done so sparingly" and, more to the point, that it never had applied structural error in the child dependency context. Id., 839; see also *Banks* v. *Commissioner of Correction*, 339 Conn. 1, 29, 259 A.3d 1082 (2021) ("[o]nly a small share of constitutional errors are structural, that is, so presumptively harmful that they require automatic reversal"). The court "concluded that the significant differences between child dependency proceedings and other judicial proceedings militate decisively against applying a per se reversible error

rule in dependency cases," and it declined to do so. *In re Amias I.*, supra, 343 Conn. 840.

In reaching this conclusion, our Supreme Court "agree[d] fully with the California Supreme Court's reasoning in *In re James F.*, 42 Cal. 4th 901, 915–16, 174 P.3d 180, 70 Cal. Rptr. 3d 358 (2008), in which that court concluded that the significant differences between child dependency proceedings and other judicial proceedings militate decisively against applying a per se reversible error rule in dependency cases. See id., 917 ('[w]e cannot agree . . . that prejudice is irrelevant in a dependency proceeding when the welfare of the child is at issue and delay in resolution of the proceeding is inherently prejudicial to the child'). '[T]he price that would be paid for [applying such a rule], in the form of needless reversals of dependency judgments, is unacceptably high in light of the strong public interest in prompt resolution of these cases so that the children may receive loving and secure home environments as soon as reasonably possible.' Id., 918." *In re Amias I.*, supra, 343 Conn. 840–41. The same policy considerations are implicated in this child dependency proceeding and thus, we will not presume prejudice here. See id.; see also *In re Jaelynn K.-M.*, supra, 229 Conn. App. 383 (concluding that *Cronic*'s presumption of prejudice was not applicable to constructive deprivation of counsel claim in child dependency proceeding).

It is therefore incumbent on the respondent to prove prejudice to prevail on his claim of ineffective assistance of counsel. See *In re Peter L.*, supra, 158 Conn. App. 563. Apart from arguing that prejudice should be presumed, however, the respondent has not addressed the issue of prejudice in his briefs to this court, let alone proven that his counsel's alleged incompetency contributed to the loss of his parental rights. See, e.g., *In re S. F.*, 229 Conn. App. 1, 10 n.7, 326 A.3d 609 ("[a]nalysis, rather than mere abstract assertion, is

required in order to avoid abandoning an issue by failure to brief the issue properly" (internal quotation marks omitted)), cert. denied, 350 Conn. 932, 326 A.3d 1108 (2024). We conclude that the respondent cannot prevail on his ineffective assistance of counsel claim because, as the petitioner argues and we agree, he did not brief the issue of prejudice and, thus, his claim is inadequately briefed. See id.

On the basis of the foregoing, we reject the respondent's claim that his trial counsel rendered ineffective assistance at the termination of parental rights trial.

## II

The respondent next claims that he has a due process right to a hybrid habeas fact-finding proceeding in the trial court in order to more fully develop the record in support of his claim that he was denied the effective assistance of counsel at trial. He claims that "procedures available to him to vindicate his right to effective assistance of counsel are inadequate." He further claims that, if due process does not afford him such a right, this court should exercise its supervisory authority to afford him that right. These claims warrant little discussion.

As the respondent acknowledges, our Supreme Court concluded in *In re Jonathan M.*, supra, 255 Conn. 227–28, that "due process does not dictate that the petitioner must be permitted to utilize the writ of habeas corpus as a procedural means of attacking collaterally the termination judgment." He further acknowledges that the court saw "no need to utilize [its] supervisory authority to supplement the evidentiary record in direct appeals from such judgments in an effort to create an alternative to the habeas relief sought in this case." Id., 236. In reaching these conclusions, the court explained that there were "other means of vindicating the right to effective assistance of counsel . . . through which an

indigent parent may challenge a termination judgment . . . ." Id. Specifically, in addition to the right to bring a direct appeal from the termination judgment, a parent may seek to "open the final judgment of termination and assert a claim of ineffective assistance of counsel"; id., 237; and/or file a petition for a new trial. Id.,239.

Although the respondent argues that the latter two options are inadequate, he did not attempt to avail himself of those options. Moreover, he also correctly acknowledges that, "to the extent the claims overlap, this court is bound by our Supreme Court's prior ruling" in *In re Jonathan M.*[15] We are not at liberty to assess the propriety of the "other means" that were available to the respondent to vindicate his right to effective assistance of counsel under these circumstances. This court is bound by the precedent of our Supreme Court; see, e.g., *In re Wendy G.-R.*, supra, 225 Conn. App. 201 n.12 (rejecting request to reconsider propriety of other means parent has to vindicate right to effective assistance of counsel set forth in *In re Jonathan M.*); and we therefore reject the respondent's claim that he has a constitutional right to a hybrid habeas fact-finding proceeding, and we decline to exercise our supervisory authority to create one in light of our Supreme Court's recognition of other available remedies in *In re Jonathan M.*

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15] We note that the respondent explains in his brief that "[t]his claim is fully briefed to allow this court an ability to fully examine whether *In re Jonathan M.* forecloses action by this court and to preserve the argument in further proceedings."